Dennis Reardon for Appellant Newman. Your Honors, a couple of years ago I had a case in the Arkansas Supreme Court involving a statute, a DNA statute, under which new DNA, if there was new DNA evidence, it had to be considered in light of all of the evidence in the trial record to see if it would make a difference. And the state took the position based on legislative intent and in good sense that all the evidence meant all the evidence of guilt, but you didn't consider all the evidence of innocence. And our argument in response to that was all means all. Are you talking about that statute that Congress passed recently for retesting of DNA under the newer methods? No, this was actually under an Arkansas state statute, Your Honor, that permitted a new action based on of making that reference is that in our case here, just as all means all is a fairly simple argument, our argument here is any means any. You have a good textual argument based on that word. However, it's kind of risky for a circuit court to say that a Supreme Court decision no longer applies when there isn't any explicit Supreme Court decision saying it doesn't apply, and when the statute doesn't appear to speak quite directly to it. And that's our difficulty. Now, as I recall, and I may be recalling wrong, so I need your education on this. I need you to educate me. As I recall, two or three circuit courts have spoken and say Stone survives AEDPA. One West Virginia District Court has spoken and said no it doesn't. Have I got the authorities right? I think that's right, Your Honor, yes. And so you want us to stick our nose, our necks out and go with the West Virginia District Court? Well, let me respond to that as best I can. There's really only one opinion that deals with this with any, in any substantial way, which is the Seventh Circuit opinion in Hampton. And let me say this, Judge Easterbrook is a great intellect, but you, it is really apparent that he went far beyond a reasoned decision in this sense. He actually ruled that Fourth Amendment claims are not within 2254A because they don't involve custody, which would mean that not only put AEDPA aside, it would mean that there never was any basis to have federal habeas corpus over a Fourth Amendment claim. And the response to that was, of course, the Supreme Court decided many Fourth Amendment claims and other courts did before Stone v. Powell. But more importantly, Stone v. Powell says that Fourth Amendment claims are within the 2254A and says that relief can be granted if there's no full and fair hearing. So it's impossible to say that Stone v. Powell directly refutes Judge Easterbrook's opinion that Fourth Amendment claims are not within 2254A. He says the seizure may not have violated the Constitution, but custody does. What he's saying is you have to be in custody is not, you may be in jail for the rest of your life, but that is not custody for the purposes of 2254A because it only deals with a Fourth Amendment claim that you don't have a personal right to. Well, I think what he's saying, I mean, I try to define Easterbrook, he's far too smart for me, although he's become much more practical since he started living more of his time in Alaska. What he's saying is, it claim itself is a custody claim, and absent custody, there's no reason to have it. I think that's what he's saying. No, but Your Honor, that was not a case which involved somebody who was walking around in the streets. It was a claim in which somebody was in prison and was claiming their custody was illegal because their Fourth Amendment rights had been violated. And Judge Easterbrook said, a Fourth Amendment violation does not produce illegal custody. And Stone v. Powell, and therefore no Fourth Amendment claims are or really have ever been within 2254A. Isn't he, what he's saying is that if he's not in custody, he just has a civil claim, and we have 2255, a statute to get it. But what he's saying is, to use this process to get the key to it, you have to be in custody. Now, whether he's right or wrong, it seems to me that's his position. But Your Honor, if I understand what he's saying. I'm not arguing for him. I'm just trying to tell you, ask you, I'd like to understand why you think that his position is wrong. But I understand, and I think it's clear that his position is that therefore, Fourth Amendment claims are not within the purview of 2254A at all. And Stone v. Powell says they are indeed. This is not jurisdictional. It's prudential on our part. They are indeed in there, and you can grant them if there wasn't a full and fair hearing. And that's inconsistent with Judge Easterbrook's holding that Fourth Amendment claims simply aren't within the scope of 2254. And the government's argument is, if they're not within 2254A at all, then 2254D doesn't count. Counsel, I want you to address something that is on my mind that's a little bit distinct from that. My own impression of Judge Easterbrook's opinion was that it went around Robin Hood's barn something because he's such a strict textualist. And my take on it was a little different, and that is there's just nothing about AEDPA that suggests that what they were trying to do was expand habeas relief. I think one of the other circuits said the same thing. Well, let me, just one thought about the point we were pursuing here before I go on, which is that, and more directly answer your question, if Judge Easterbrook was right, you can't ever grant a, under Stone v. Powell, you can't ever grant a Fourth Amendment habeas claim raised on 2254. And the Second Circuit in Young v. Conway in 2013 ruled that they were going to grant a Fourth Amendment claim because the government had waived the argument in the district court of Stone v. Powell. So clearly they were holding, we jurisdictionally can do it, and Stone v. Powell is prudential. We generally don't do it without the full and fair hearing, except for the full and fair hearing exception. But the Second Circuit says if you waive Stone v. Powell, then we can get to it because we have jurisdiction over it. So I would just submit that Young v. Conway is directly, in contrast to Judge Easterbrook's opinion, where he says these claims are no longer, really have never been under 2254A. But isn't the real point that we've got to deal with is whether Stone v. Powell survived the AEDPA? Right. And I think Judge Kleinfeld has asked me to directly address these concerns. I haven't gotten to that yet and I'd like to hear it. Yeah, I'd like to pose a related comment. Like, to me the issue isn't controlling whether we like Judge Easterbrook's opinion or think there's a flaw in its reasoning. It's simply, do we think AEDPA abrogated Stone v. Powell? And I'm happy to address that on a blank slate. And I thought that's what Judge Kleinfeld was inviting you to do, and I didn't really hear an answer to his question. Thank you, Your Honor. Let me go to that directly. So forget other case authority, and let's, is the case really a first impression in this circuit? Forget Easterbrook, just tell us why we should have taken AEDPA as expanding the scope of habeas. Right. And I would say this. I mean, Brogan says, which we cite as a 1001 case, says that there was a very good reason why you might want an exception to the false statement rule of 1001, but any means any, and you don't get to come in here and show us a good reason why any doesn't mean any. So the government really advances three arguments against the straight textual argument. One is that the Supreme Court has has continued to make references to Stone v. Powell, although we all agree they've never addressed this question. Your Honors, I would submit to you that in McNally, the Supreme Court, after I think it's 40 years of courts of appeal, saying that the honest services statute, I mean, mail fraud included honest services fraud, held that it didn't, and it had denied cert in many of those cases in which the courts had read the statute more expansively. Congress then immediately overturns that by passing 1346. The Supreme Court goes 20 years affirming or allowing in place convictions based on a theory that honest services fraud includes conflict of interest. Boom, along comes skill. I don't have any difficulty with your having a substantial textual argument, and I don't have any difficulty with supposing that the Supreme Court might itself reject Stone and say, based on the text of it, but Stone is no longer good law. What I have difficulty with is our being the first circuit to say Stone is not good law when the Supreme Court hasn't said it isn't, and there's nothing very explicit in the statute to say that they were directing their attention toward it, and the amendment seems like it was designed to restrict habeas relief rather than expand it. Well, a couple of responses. The first is that if the textual argument is very strong, any means any, and Brogan says that it does, then the government would have to come up with a way of saying it's ambiguous, which it is not on its face. And secondly, if it was ambiguous, they'd have to point to a they'd have to argue that the legislative history is inconsistent. No, I don't know if they'd even have to go that far. You know, when I look at D, it says an application for a writ shall not be granted with respect to a claim. It doesn't say that if one of these nots doesn't apply, if one of these prohibitions doesn't apply on granting the writ, then the writ has to be granted. I can say don't get ice cream at the grocery and don't get cookies at the grocery, and it doesn't mean get a whole lot of Brussels sprouts. Your Honor, I think that it is. All they do, do you understand what I'm asking you? I'm saying that two nots don't make a must, that unless the notion of expressionist, no, it wouldn't be that. It would be a negative pregnant. You're telling me I have to read D to have a negative pregnant, and I don't see why I have to. Well, what I'm saying is that if we are correct, and Stone says it, that Fourth Amendment claims remain in A, then the language below that any claim, constitutional claim, and Stone recognizes you can still make Fourth Amendment claims under certain circumstances that this is the applicable standard, I think it is perfectly consistent. Let's look at before. It doesn't. D says you can't – a district court isn't allowed to grant the writ if the claim was adjudicated in the merits unless, and then it has two circumstances where the district court is authorized to grant the writ. But it doesn't say that the district court has to grant the writ if neither of those two circumstances apply. But I read that as, and I think it's been interpreted as saying that you don't grant the writ except in these circumstances, and you do grant the writ there. I mean, if there's no reason – It's the words that followed, and you do, and, where you said, and you do grant the writ if those circumstances don't apply, and that's what I don't get. Where does it say that? Well, but this court time and time again, and every court, including the United States Supreme Court, since Stone – since Edford was passed, has granted the writ when those conditions apply, when there is an unreasonable application of state law or there is an unreasonable determination – and you said, for some other reason entirely, don't grant the writ? Well, but I sense, and Judge Kleinfeld, I think you've stated it, that, you know, why do we go out on this limb when the general impression is that AEDPA was meant to limit federal habeas corpus? Prior to AEDPA, we had two situations. The AEDPA conditions didn't apply to a large universe of cases, but when you got to Fourth Amendment claims, they were out of the mix, except under these very limited conditions. It makes perfect sense to say, no, come in, and we're going to have a uniform system. It is going to make – it's going to apply to all habeas corpus cases, including Fourth Amendment claims, which still can be brought under Stone v. Powell, but it's uniformly everybody is going to have to meet a more rigorous set of conditions. That's a perfectly reasonable interpretation of what Congress wanted to do. I think the textual analysis supports it, and there's nothing – we would agree with this – there's nothing in the evidentiary, in the legislative record, one way or another, to indicate that – would Congress grant the writ if there was a denial of constitutional rights with respect to a search and seizure, even if there was a full and fair hearing? It certainly doesn't say that. It says any, and a Fourth Amendment claim is one of any. Yesterday, the Second Circuit issued an opinion in a surveillance case, and they said they found a statute illegal, and they say we do so with the full confidence that Congress can, if it chooses to, if we get this wrong, put together a statute that makes it clear what our intent was. I want to make a comment on timing for the benefit of the advocates. It's a very interesting, difficult case, and as I said earlier, we're willing to go beyond our scheduled time, especially when there are questions from the panel. And so I wanted to say to Mr. Reardon, don't worry that there's a red light saying to stop, and you're six minutes over, as long as my colleagues are asking questions. Then you should keep advocating. I want to say to Mr. Anderson that you shouldn't worry we'll give you equivalent time. Judge Kleinfeld, again, I want to clearly, as best as I can, respond to your question, and one thing would be this. Let's assume for the moment that Congress did want a uniform system of limitations, but that would apply to all habeas cases. So if we consider Stone v. Powell to limit Fourth Amendment claims by imposing a requirement that they not be heard unless there was a full and fair hearing, Congress decided to step in and set a standard more arduous or more difficult for non-Fourth Amendment cases, but a uniform system. How would it write a statute? Why isn't writing the word any in there a perfectly reasonable way to indicate that it now wanted all claims subject to this as opposed to having no limitations on non-Fourth Amendment claims and the Stone limitation on Fourth Amendment claims? It seems to me that- Where is the any? Which- The any is in 2254d where it talks about subjecting any, it could use all, but any claim to the subsections of 2254d. Okay, but that doesn't really help me because it says shall not be granted with respect to any claim in these categories unless one of two exceptions applies. It doesn't say shall be granted if the exceptions don't apply. It's the negative pregnant that I'm asking about rather than the scope. Thank you, and it's helped me focus the response. Those unless, the things that follow unless, unreasonable application of the law, unreasonable determination of facts are gateway provisions. That is to say that a case has to make it through one of those two gateways before this court considers absolutely de novo a Fourth Amendment claim as it would on direct appeal from a federal case. So what I'm submitting to the court is that there was a gateway provision in Stone v. Powell. You can still raise Fourth Amendment claims, but it's going to have to be absent of full and fair hearing. And that Congress now has set up a bigger gateway that applies to everything, but the use of the word NA suggests that these are the gateways. And of course the response to your question, but it doesn't say you must grant them, absolutely not. If you get, if somebody gets through the gateway provisions, it just means that a federal court considers the claim as if it came up from the federal district court. And of course it could find either that it is not, there wasn't a Fourth Amendment violation, or it could find in its own de novo opinion, or it could find there was a Fourth Amendment violation, but this seemed to be the subject of the argument we just heard. It wasn't prejudicial under Brecht. So that helps. Now I think I understand your argument, Mr. Reardon. What I'm going to suggest is that although you're well over time. I appreciate the court's indulgence. I'm going to give you three minutes for rebuttal, and we're going to give Mr. Anderson as much time as he wants without him getting angry that I'm asking him to argue too long. May it please the court, I hope that I don't take a lot of time. I don't want to take a lot of time. On the question of the survival of Stone v. Powell, if you look at the language of 2254, first off, the state has several arguments why Stone does continue to apply. But if you look at the textual argument, which is what counsel is arguing, we would submit that Judge Easterbrook in fact had it right that 2254A is the initial, shall we say, gateway. You have to establish as a petitioner that someone is in custody. Newman is not in custody because of a Fourth Amendment violation. He's in custody because of the exclusionary rule, a judicially created rule established in that. The reason I have trouble just going on the Seventh Circuit opinion is that people get the writ granted all the time because of some constitutional violation that led to their custody. And the Fourth Amendment is just one more. And I understand the Fourth Amendment violation. The person was tortured and never given a Miranda warning. And he confessed and there was failure to give him a Miranda warning and also actual duress. Let's take that hypothetically. He'd still get his writ. And Judge Easterbrook's reasoning in that Seventh Circuit opinion would seem to apply to him as well as to the Fourth Amendment. And I understand the court's concern in that regard. The problem that I have is that there are other remedies that are available for Fourth Amendment violations and were available prior to Matt. Other amendments for Fifth Amendment violations too. That's true. And I can't remember the name of the case, but there is the United States Supreme Court decision that says that the analysis behind Stone v. Powell, in other words the cost exceeding the benefits, does not extend to Fifth Amendment claims. It looks like just a pure policy decision that we're going to contract the exclusionary rule on real evidence, but not on testimonial evidence. And it may very well be, Your Honor, as far as Matt and for that matter. The Supreme Court. Yes. But as for the Seventh Circuit reasoning, I don't see where it suffices to draw a distinction between Fourth and Fifth Amendments. Well, certainly Judge Easterbrook didn't draw that distinction and, of course, didn't discuss the Fifth Amendment. But above and beyond 2254A, of course, as has been discussed, there's the notion that AETA actually constricted further the granting of federal habeas. And let me give you just an example. 2254D is what I would call another gateway. The petitioner has to establish that the state court's adjudication of a claim was contrary to or an unreasonable application of Supreme Court precedent or resulted in a decision that was based upon unreasonable facts. Now, we're not worried about 2254D2. I'm focusing upon D1. Let's assume for the sake of argument that a state court does, in fact, make an unreasonable application of Fourth Amendment jurisprudence. And so this court, but for Stone v. Powell, would have to review the claim de novo. And so are we going to have a situation where we have Stone v. Powell that applies to cases that don't survive 2254D1, but Stone v. Powell doesn't apply to cases that aren't reviewed on the merits? It just doesn't make sense to me, because 2254D1... is a gateway. And if the Fourth Amendment claim is unreasonably decided by a state Supreme Court, then because it's a gateway, Stone v. Powell would now apply. The analysis behind Stone v. Powell. But if it does apply, then Stone v. Powell doesn't apply. That doesn't make sense. It applies on one hand, but doesn't apply on the other hand. So what you're saying is you get through the gateway if the state court was unreasonable, and then you still don't grant the writ because you got a full and fair hearing? That is exactly what I'm saying, Judge Kleinfeld. Because the any claim that counsel talks about in 2254D is another restriction. And it's the claim that's adjudicated on the merits. So if it's unreasonably adjudicated, then Stone v. Powell still applies, and the petitioner doesn't get the writ. That doesn't make sense. You know, where I keep getting lost is I have never fully understood in Stone what a full and fair hearing is. Judge Kleinfeld, the reason I hesitate is because I think it's fair to say that the circuit courts have struggled with that issue. And I think this court has struggled with that issue. We've cited in my brief a string of cases from this circuit. And full and fair hearing, well, I'll get right to the issue of full and fair hearing. The question is opportunity, not consideration, at least according to the cases from this circuit. Now, I realize that Mack talked to another... Opportunity for a full and fair hearing. I'm sorry, Your Honor? Opportunity for a full and fair hearing. Yes, it's opportunity. That's what we've held. If the state has a procedure where you can file a motion to suppress evidence obtained in an unlawful search, and the judge denies the motion to suppress, if facts are in dispute, he has an evidentiary hearing and decides the facts, and if they're not, he doesn't have an evidentiary hearing and decides, assuming the facts are the way the defendant says, there's still not an unlawful search. Is there a circumstance where there's not an opportunity for a full and fair hearing in that structure? Or does it only mean if some state, I don't know if there is one, says you can't make motions to suppress and you can't object to the admission of improperly obtained evidence at trial? Well, I don't think you can have a situation where you have a sham opportunity for the hearing. What's a sham? Something... I mean, how would I spot one? It's difficult for me to definitively state that, but something so off the wall, but I don't believe it necessarily requires an evidentiary hearing, and particularly in this case. Because if you look at the... It doesn't if everybody agrees on the facts. And that's where I was getting to, Your Honor. Particularly in this case, where as far as the automobile exception, the probable cause standard that was found by the Idaho Court of Appeals to sustain the motion to suppress, those specific factual findings made by the Idaho Court of Appeals, that support the probable cause finding established by the... or found by the Idaho Court of Appeals, were in fact stipulated to by the appellant. We've already got the Mormon... What is it? The Mormon case. There's also an unpublished case here in our circuit that relies on Stoll v. Powell. Other circuits have relied upon Stoll v. Powell. And it strikes me that Judge Easterbrook uses a lot of Stoll v. Powell in his analysis. Is the issue whether or not we should overrule our prior cases and leave Stoll v. Powell? In fairness, Judge Wallace, I don't believe that this court would be overruling its prior cases, because this court has not specifically addressed the question of whether Stoll v. Powell survives ADEPA. Not specifically. I thought we'd done that in Mormon against Sirica. Your Honor, I don't believe the very specific question of survival of Stoll v. Powell was addressed in... It was cited. It was cited. We ordinarily don't cite cases that don't exist. That would be true, Your Honor. And, in fact, we've cited a case, and I can't find it in my notes right now... Cross-examine the judges to find out. Well, I don't subscribe to that. But in any event, you're absolutely correct in that this court has continued to cite it. The United States Supreme Court has continued to cite it. We've had unpublished dispositions citing it. Numerous. We unpublish them because we've already cited and published dispositions. And, in fact, this court denied a COA on the question of whether there was a fair and full opportunity under Stoll v. Powell. Now, I cannot, in this circuit, I cannot envision the scenario where this court would deny a COA, or any circuit court would deny a COA on the question of a fair and full opportunity. I understand that argument, but denial of a COA isn't really a precedential event for us. I believe, Judge Gould, that we cited, and I hope I'm right, that we cited a published opinion in which I thought it was this court, maybe it was another court, discussed the denial of the COA and why reasonable jurists wouldn't disagree. That is in our brief, I believe. That might permit an argument that that panel was implicitly applying Stoll. Yes. However, they didn't address head-on the issue that is being raised by Mr. Reardon's client. It's not going to have a lot of sway with most panels. And, Your Honor, I do agree with you, as I was discussing with Judge Wallace, that this court, the Ninth Circuit, has not expressly addressed the specific question of the survival. I heard that. We just continue to cite it. Yes. I want to ask you a different question that may have been only covered obliquely. The Supreme Court has told us, and Mr. Reardon may comment on this in his rebuttal argument or reply, but the Supreme Court has told us innumerable times that we can't do anticipatory overruling when it has to do with the idea that a subsequent precedent of the Supreme Court has undermined an earlier precedent of the Supreme Court. And I know that we've got a legion of Ninth Circuit cases citing a legion of Supreme Court cases on that principle. So my question for you is, does that principle apply to the situation where a contention is made that a statute here, AEDPA, has undermined or overruled a Supreme Court precedent like Stone? In other words, are we free under Supreme Court doctrine or ours to make a decision that Stone has gone, or do we have to just let Appellant argue that issue to the Supreme Court? I think this court should do as it did, and I realize it's not cited in my brief, but in the recent decision of Pizzuto regarding a Martinez issue and the expansion of Martinez, and that is exercise judicial restraint. This court should not go beyond what the United States Supreme Court has done as far as discussing Powell and reaffirming Powell, and in fact we cited Danforth v. Minnesota where the United States Supreme Court again cited Powell for the proposition that the United States Supreme Court can exercise its authority under I believe it's 2243 where it discusses the equitable resolution of writs to establish equitable rules associated with the issuance of the writ irrespective of AEDPA. We discussed that extensively. It was discussed in Danforth and we discussed it extensively in our brief, and that in fact is what Stone v. Powell is. It's an equitable rule, admittedly equitable to the state, because of the cost associated with expanding the exclusionary rule to federal habeas and other issues of collateral attacks. Unless the court wants me to discuss the issue of the 13, at least 13 opportunities that Newman had for fair opportunity to present his claim, I will simply ask the court to affirm the magistrate in this case. Let me see if two of my colleagues have any questions on the form of fair opportunity. Thank you. I think we're primarily hung up on whether the literal language of AEDPA requires us to say and whether we can say that Stone doesn't control. Thank you, Your Honors. Okay, Mr. Verdin. We're giving you three minutes for- I will stay within that, Your Honor. A couple of things. One, if this court is- I cannot really complain if this court were to issue an opinion that said that we think the textual analysis here is a very, very serious question, but we think that it's only the United States Supreme Court that can really iron it out. I had the Second Circuit do that in a case where they said, we invented the Klein Doctrine 50 years ago. We now think it's wrong, but it's up to the Supreme Court to fix it. They denied cert. But at least the signal is there that this is an important question of law that should be decided. Secondly, if the court were to deny the Stone versus Powell argument on another grounds, I'd love it to be on the grounds that it's embracing Judge Easterbrook's analysis in a Hampton case, because I think that's a very, very large target to shoot at. You want us to go with Easterbrook because you think it's easier to shoot down? I want you to go with Mr. Newman on this question, but I'm just saying that the court has expressed different reasons why it may not want to go that way, including just the reason, well, the textual analysis, but we need to be more careful. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Wallace, Kleinfeld and Gould